### KRUMM, Executor, Plaintiff-Appellant v CUNEO et, Defendants-Appellees.

Ohio Appeals, Second District, Franklin County.

No. 3499. Decided January 11, 1943.

Chas. A. Schwenker, Columbus, and Charles W. Leslie, Columbus, for plaintiff-appellant.

Phil S. Bradford, Columbus, and Frank B. McClelland, Columbus, for defendants-appellees.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the <u>Probate Court</u> of Franklin County, Ohio.

Plaintiff-executor filed his action in the Common Pleas Court, seeking instructions as to distribution of certain funds in his hands, particularized as the personal estate possibly coming to decedent from her deceased husband prior to her death. There is some controversy as to whether or not the particular property in question came to plaintiff's decedent through the will of her decedent.

If not, there would be no question but what her decedent's estate would be distributed under the plain provisions of Section 12 of her will. If the particular property came to her through the will of her husband, then the question arises as to whether or not she took an absolute estate therein, or only a life estate with remainder

over to named relatives of John Peirano, husband of plaintiff's decedent.

The trial court was the Probate Court of Franklin County, Ohio. That court determined that under the will of John Peirano who died in March, 1927, the particular personal property now in question passed to the widow, Caroline Peirano, absolutely, and that the attempted devise over was void. The trial court did not pass on the question as to whether or not the property in question came into plaintiff's decedent's hands through the will of her deceased husband, or in some other manner, but for the purposes of his conclusions and decision, assumed that it did come to plaintiff's decedent through the will of her husband, since following his analysis the results would be the same.

· In the first instance we will follow the same order of analysis as did the trial court and upon the same presumption. The pertinent portion of the will of John Peirano reads as follows:

"Item 1. I direct that all my just debts and funeral expenses be paid out of my estate as soon as practicable after the time of my decease.

Item 2. I give and devise to my wife, Caroline Peirano, for and during her natural life, all of my real estate wheresoever situate. After her death I give and devise to my nephews the following real estate: To Frank L. Peirano, the property known as 424-26 East Long Street; to Albert Peirano, the property known as the Northeast corner of Ninth and Long Streets and also the property known as the Southeast corner of Summit Street and Seventh Avenue; to Stephen Peirano, the property known as the Southeast corner of Main and Seymour Streets, to my nieces, Mrs. Clara Meier and Mrs. Bertha Betz, the property known as Nos. 79, 81 and 83 Cleveland Avenue, absolutely and in fee simple.

Item 3. I give and bequeath to my wife, Caroline Peirano, all my personal property of every kind and description, wheresoever situate, but in case she should die and leave any part of the personal property unconsumed, or undisposed of, then in that event, the part so remaining shall be divided equally between my nephews, Frank, Albert and Stephen Peirano, and nieces, Mrs. Bertha Betz and Mrs. Clara Meier, share and share alike."

The present controversy involves only Item 3 of the above quoted will.

Courts of Ohio have had under consideration a great many cases involving the construction of the item of a will wherein was presented the issue as to whether or not the language of the testator constituted an absolute estate in fee simple in the first taker or a life estate with the remainder over at some future time on the happening of some future event.

Courts have universally held that the pole star and paramount question in all cases of this character is ascertaining the intent of the testator, and when the intent is so determined, absolute estates will be reduced to life estates unless in so doing violence will be done to the express language used in the will, or where the attempted remainder is void for uncertainty, repugnacy or in violation of the plain rules of law that a remainder may not be engrafted upon an absolute estate in fee simple   In most of the reported cases where it is held that the first devisee only takes a life estate, even though the language used in the first part of the bequest would be sufficient standing alone to pass an absolute and fee simple estate, yet the language immediately following, granting power, disposition or use for support, bettering of condition, or similar language, discloses an intent of limiting the estate and under such conditions it has been held that the first estate is one for life and the remainder over is legal. The leading case under this class is that of **Johnson v Johnson, 51 Oh St, p. 446.** This case followed the announcement made by the Supreme Court in the case of **Baxter v Bowyer, 19 Oh St, 490,** and **Home v Lippardt, 70 Oh St, 261.** In the later case of **Tax Commission v Oswald, 109 Oh St, 36,** the case of **Johnson v Johnson, supra,** was again cited, approved and followed. Judge Robert Day, in rendering the opinion in this case at page 42 lists numerous decisions by the Supreme Court in which the principles announced in the case of **Johnson v Johnson, supra,** were followed, and in at least three of the cases the memo. opinions stated, "Affirmed", upon the precedent of the Johnson case.

The case of **West v Aigler, Admr., et, 127 Oh St, 370,** is somewhat different in its factual conditions, but Bevis, J., in rendering the opinion of the court, makes some observations that are applicable to the general proposition. We find the following principle announced in all the cases that it is a general rule that a fee may not be cut down in subsequent clauses of the will, but if the language was such as to indicate an intention to grant a life estate to the first taker with a remainder over that the court will construe the will as a whole, giving full force and effect to the intention expressed in the will. It will, therefore, be observed that courts in cases of this character are forced to consider two principles diametrically opposed, as follows: (1) The general rule that a fee may not be cut down in subsequent clauses of a will; and (2) If the language is such as to clearly indicate an intention to grant a life estate to the first taker with remainder over, courts will construe the will as a whole giving effect to the intention expressed in the will, notwithstanding that the language making the bequest to the first taker, standing alone, would pass an estate absolute and in fee simple.

With these principles in mind, what should be the proper construction of Item 3 of the will of John Peirano?

It is conceded that the first few lines of John Peirano's will, standing alone, gives an absolute estate to his wife, Caroline. It will be further observed that under Item 2 the testator gave to his wife, Caroline, all his real estate for life. It is argued that it affirmatively appears in the will that he understood the difference between a fee simple estate and a life estate. No similar language is. used under Item 3. This argument is germane, but not necessarily conclusive. It will be observed further that following the language which admittedly standing alone passes an absolute estate, no powers, absolute or limited, are included. The following words "but in case she should die and leave any part of the personal property unconsumed", if nothing more was added, might be construed as a gift limited to her consumption, or, in other words, a limited power implied, but the will does not stop at that point but there is added, "or undisposed of, then in that event, the part so remaining shall be divided equally", etc.

We now refer to some of the cases and authorities where it is. held that where an absolute or fee simple title is devised that the attempted limitation over is impossible and void.

The first case to which we are referred is that of **Steuer v Steuer et, 8 C. C. N. S., 71.** The syllabus in that case reads as follows:

Under a will containing a devise to A. generally, with no power of disposal expressed, but followed by a devise to B. of what shall remain undisposed of at A.'s death, A. takes an estate in fee simple and the attempted limitation over is void."

This was a decision by the Circuit Court of Cuyahoga County, and the opinion was a per curiam by Henry, J., Marvin, J., and Winch, J. This court is recognized as of very high standing. On page 72 of the opinion the court points out that wills of this character are of four sorts of provisions: No. 1, where there is a devise in terms for life, but with absolute power of disposal and followed by a devise to B. Under this class A.'s estate is not enlarged by the power to a fee, but is for life only.

Under example 2, the devise is to A. generally, with absolute power of disposal, and was followed by a devise of the entire estate to B. Under this situation A. takes a life estate and the limitation over of the corpus is good.

Under example 3, where there is a devise to A. generally, but with qualified power of disposal and with a devise to B. of what shall remain undisposed of at A.'s death, A. takes a life estate and the remainder over is good.

Under example 4 there is a devise to A. generally, with no power of disposal expressed or with an absolute power but followed by a devise to B. of what shall remain undisposed of at A.'s death. A.

takes an estate in fee simple and the attempted limitation over is impossible and void. Under example 4 the court cites the case of **Widows' Home v Lippardt, 70 Oh St, 261.** The decision by the Supreme Court in the **Lippardt case, supra,** may not be considered as stare decisis for the reason that the ultimate conclusion of the court turned upon another question. However, the case is helpful in that Summers, J., in rendering the opinion refers to many cases not only in Ohio, but in other jurisdictions, and particularly calls attention to the principle that an absolute or fee simple estate may not be cut down to a life estate except under certain limited conditions.

In the case of **Hull v Chisholm, 7 Oh Ap, 346,** the syllabus reads as follows:

"Where by the terms of a will a fee is clearly given a limitation over of the remainder is void as inconsistent with the fee granted."

Under Item 3 of the will the testatrix gave all her property, both real and personal, to Alice V. Hutchinson, "to her and her heirs and assigns forever, subject to payment of the debts, expenses and costs of monument mentioned in Item 1."

Item 3 provided in substance that in case of the death of the said Alice V. Hutchinson without leaving any child or children that whatever may remain of the property in Item 2 of the will should be equally divided between certain named nephews.

In the case of **Tracy et v Blee et, 22 C. C. N. S., 33,** the Circuit Court of Cuyahoga County, opinion by Henry, J., Winch, J. and Marvin, J., it was held that a will devising real estate to one person generally and with absolute power of disposal, invests that person with a fee simple estate, notwithstanding the fact that the will further provides that whatever may be left of said real estate upon the death of said devisee shall pass to someone else.

In the case of **Pealer, Admr., v Cruit, 3 Abs, 325,** the Court of Appeals of Franklin County made the following pronouncement:

"Where one clause devises a fee simple estate and another provides for remainder, implying a life estate, the first clause, granting a fee simple is valid and the second is void, for where there is a fee, there is no remainder."

The opinion was by Allread, J., and the decision was March 28, 1925.

A second item of the will in question was as follows:

"I give, devise and bequeath to my wife, Sarah Cruit, all the rest, residue and remainder of estate, both real and personal, to have and to hold to her and her heirs and assigns forever."

The third item of the will provided in substance that after the death of Sarah Cruit it was to be divided, share and share alike, between two daughters and a grandchild.

In the case of **Baxter v Bowyer et, 19 Oh St, supra, (499)**, Welsh, J., in delivering the opinion of the court, after determining that the will in question devised a life estate with remainder over, then made the following comment:

"Most of the authorities cited by counsel where an apparently contrary doctrine has been held, are distinguishable from the present case by a single peculiarity. In most of them the subject matter of the limitation over was, not the remainder of the estate, but such part of the estate as the first devisee or legatee chooses to leave."

The court then cites what he considers the leading case of Attorney General v̇ Hall, Fitzgibbon, 314, wherein the will provided that the limitation over was so much as he should be possessed of at his death; also, Ide v Ide, 5 Mass., 500, the provision of the will was "the estate he should leave", and in Jackson v Bull, 10 J. R. 19, "the property he died possessed of", and in Jackson v Robbins, 16 J. R., 537, "such estate as shall remain unsold, undevised or unbequeathed." Welsh, J., then continues as follows:

"These and like cases are clearly distinguishable from the present one. They are cases where the testator gives to the first devisee full dominion and control over the estate and then under the form of a limitation over, undertakes to make, as it were, a will for the first devisee to take effect in case the first devisee shall fail to make one for himself or otherwise to dispose of the property. This the testator can not do."

In the case of **Tax Commission v Oswald, 109 Oh St, supra, at page 50** of the opinion, Day, J., makes the following observation:

"Where a testator devises an estate in general terms, without specifying the nature of the estate and gives the devisee a power of disposition of the property, providing a limitation over; if the power of disposal is unconditional the devisee takes a fee; if conditional upon some certain event or purpose, he takes a life estate only."

The following is taken from Volume IV of Cyc. under the subject of "Wills", p. 585:

"**Inconsistent Limitation of a Fee in General.**—A limitation even after a clear fee is given on the death of the first taker at a certain age or without issue, children or heirs, or intestate or on his or her marriage, is usually void and leaves a fee in the first taker. So a fee may be created notwithstanding other restrictions, as an attempted

exemption from creditors. Where property is given in clear language sufficient to convey an absolute fee the interest thus given shall not be taken away or diminished by any subsequent, vague or general expressions in the will."

Also, p. 1587:

"**Devise over of Property Remaining after a Fee.**—Where a fee is clearly given, a limitation over of the remainder is void as inconsistent with the fee granted, whether the gift over is expressed to be of what remains or may be left or the residue or is on death of the first taker without having disposed of the property."

Also, p. 1713:

"The general rule is that where an estate in fee simple in real estate or an absolute interest in personalty is given by will, a total or general restraint upon the devisees or the legatees' power of alienation is void, as repugnant to the nature of the estate or interest given."

Also, see **Volume 41, O. Jur., (Wills), §§625 and 626, p. 741:**

"625. **Inconsistent Limitations.**—An estate in fee simple is the full and absolute estate in all that can be granted. Subsequent provisions of a will not avail to take away from such estate certain qualities that the law regards as inseparable therefrom, as, for example, alienability. Where a testator makes a gift with a condition inconsistent with, and repugnant to, the gift, the condition is wholly void. It is obvious, however, that a testator may, by the use of language in other portions of the will, give a lesser estate than the meaning of the words of the gift, standing alone, would import.

"626. **Limitation of Remainder upon Fee.**—It is well settled that a remainder cannot be limited after an estate in fee. The reasoning underlying this rule is fairly obvious. The fee is the whole estate, and where the entire estate is given to an individual, there cannot be a remainder. Nothing is left on which a remainder over can operate. It is frequently asserted that a remainder limited upon an estate in fee simple is void. This rule is applied, however, only where it clearly appears that the first beneficiary is to get an absolute interest. Where it is possible to reconcile two grants by construing the first as a life estate only, this will be done. If the first provision of a will only prima facie imports an absolute estate, and the circumstances warrant the conclusion that the testator did not intend to give to the first devisee an absolute estate in fee simple, then the intention of the testator, as ascertained from the whole

will, fairly construed in the light of all its provisions and the surrounding circumstances, should be carried out. A trust provision after the devise of a fee does not violate this rule. Inasmuch as a fee-simple estate is created where an estate is given to a person generally or indefinitely with an absolute power of disposal, a devise over of what may remain is void."

Also, refer to **Section 645,** the first part of which refers to several situations under which one clause of the will bequeaths property under language importing an absolute estate, but which under varying conditions is reduced to a life estate.

As bearing upon the question that we have been discussing, we desire to refer to the last paragraph of this section on page 773, which reads as follows:

"This type of situation must be distinguished from one where the subject-matter of the limitation over is not the remainder of the estate, but such part of the estate as the first devisee or legatee chooses to leave. Such a limitation, it has been said, cannot be sustained because it is only a 'limitation in words, and not a limitation in fact or in law'. Between a gift for life with a power of disposition superadded, and a gift to a person indefinitely with a superadded power to dispose thereof, by deed or will, the distinction is, perhaps, slight, but perfectly established, to the effect that in the latter case the property vests."

**Section 624 in Volume 41 O. Jur.,** subject "Wills", also gives an analysis of different situations under which a fee simple estate may not be cut down to a life estate. In the interest of saving space we refrain from quoting from this section, but would suggest that it be examined and read.

Analyzing the will in the instant case in the light of the authorities, we are constrained to the view that under Item 3 of the will of John Peirano his wife, Caroline Peirano, was given an absolute estate in the designated personal property, and that the attempted disposition of what might remain undisposed of was absolutely void because repugnant to the original devise.

This conclusion is identical with that of the trial court and we might have properly based our affirmance upon the written opinion, but we have elaborated upon it somewhat and added some additional authorities.

The answer of the defendants presents another issue, but it was not pursued through the evidence nor extensively argued in the briefs.

The answer denies that the property in question came into the possession of Caroline Peirano under the will of her deceased

husband. It is disclosed in the evidence that the husband, John Peirano, during his lifetime, secured by purchase several real estate mortgage securities, totaling $37,850.00, face value. Under the method of doing business with the bank it is doubtful if notes or mortgages securing them were actually assigned to John Peirano. There is some indication that it was merely a book transaction fully disclosed through the records of the bank

The bank under its arrangement with the purchaser guaranteed the payment of principal and interest. The notes and mortgages were left in its possession. As interest would become due it would make the collections and therafter make remittances. After the death of John Peirano and the appointment of the widow as administratrix of his estate, no inventory was made of these mortgage securities. On the face of the situation it might appear that these mortgage securities had been turned over to the widow by John Peirano prior to his death. The trust officer of the bank who was in charge of the entire arrangements with John Peirano at the time of the trial, had deceased. It appears that two years after the death of John Peirano mortgage certificates, which was a new form of security, were issued to the widow, Mrs. Caroline Peirano, in the sum of $30,500.00. These certificates were issued as against real estate mortgages held by the bank. The securities were the sole obligation of the bank, but of course secured by the mortgages which were made the basis for the execution of such certificates. One note and mortgage which was in the portfolio purchased by John Peirano from the bank was introduced in evidence. Counsel for defendant stated that this was the only one that they had been able to find. This note and mortgage did not bear any endorsement from the bank to John Peirano. If this was typical of the manner and method of handling all other notes and mortgages it might disclose a situation which would require very little evidence of a simliar transfer from John Peirano to his wife, Caroline, during his lifetime. There is in evidence a signature card such as is usually required by banks from their patrons, and this card appears to be signed by both John and Caroline. The purpose of the joint signature is not disclosed. While defendant made an explanation in the presentation of testimony that the one note and mortgage was the only security in the John Peirano portfolio that he was able to find, yet we are at a loss to know why the mortgage record was not presented in evidence, and thereby would be shown what, if any, transfers had been made from the original mortgagee. In short. this defense was not pursued to the point that we are able to make a finding that the mortgage certificates were not based on mortgage obligations actually coming from the estate of John Peirano following his death.

While the question is not raised in the brief and in view of our construction of Item 3 of the will of John Peirano it may not be

necessary to make any further comment as to the contingency under which the remainder was to pass to certain named relatives of the decedent, John Peirano. If by any stretch of the imagination it could be held that the language was adequate to create a life estate under the contingency mentioned, then we would be led to inquire as to whether or not there was any unconsumed or undisposed of property at the time of the death of Caroline Peirano. There is an apparent difference of about $7250.00 between the mortgage securities claimed to have been held by John Peirano at the time of his death and the mortgage certificates in the possession of Caroline Peirano at the time of her death. It would be assumed that this amount was consumed, and no question is presented relative to this amount. Can it be correctly stated that the $30,500.00 was not disposed of? We are inclined to think that the evidence conclusively supports the conclusion that the securities were disposed of. All the mortgage indebtedness purchased by John Peirano from the bank was disposed of before the death of the widow, Caroline. The fact that she made reinvestments with the same bank with which John had his dealings would not alter the situation.

Furthermore, through Item 12 of her will she made disposition of all the rest and residue of her property, which would include the subject matter of litigation. It is true that the will did not take effect until after her death, but nevertheless the instrument of alienation was made during her lifetime. The fact that it did not take effect until after her death would not be supporting of the claim that she had died with the property undisposed of.

Finding, as we do, no prejudicial error, the judgment of the trial court will be affirmed.

Costs in this court will be adjudged against plaintiff-appellant. Cause will be remanded for collection of costs and other proceedings according to law.

GEIGER, P. J., and HORNBECK, J., concur.