355 F.2d 546
 The FIRST NATIONAL BANK OF JANESVILLE, a National Banking Corporation, as Executor in the Estate of Joseph A. Craig, deceased, Plaintiff-Appellee,
v.
E. J. NELSON, District Director of Internal Revenue, Defendant-Appellant.
 No. 15158.
 United States Court of Appeals Seventh Circuit.
 January 10, 1966.
 
 Louis F. Oberdorfer, Asst. Atty. Gen., Jonathan S. Cohen, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., James B. Brennan, U. S. Atty., Milwaukee, Wis., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., for appellant; Franklyn M. Gimbel, Asst. U. S. Atty., of counsel.
 Malcolm P. Mouat, William S. Wood, Janesville, Wis., Clifford A. Pedderson, Rockford, Ill., Nowlan, Mouat, Lovejoy, McGuire & Wood, Janesville, Wis., for appellee.
 Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.
 DUFFY, Circuit Judge.
 
 
 1
 The issue presented on this appeal is whether the sum of $100,000 bequeathed from husband to wife, qualifies for a marital deduction under § 2056 of the Internal Revenue Code of 1954.
 
 
 2
 The Internal Revenue Service disallowed the deduction, and the question was then submitted to the District Court where both parties moved for a summary judgment. The District Court held the deduction should have been allowed and ordered a refund. This appeal followed.
 
 
 3
 Joseph A. Craig and Florence D. Hilborn entered into an antenuptial agreement dated April 12, 1946. Pursuant to this agreement, Florence Hilborn agreed to accept one third of Craig's net distributable estate or $100,000, whichever sum was smaller, in lieu of all rights she might have in Craig's estate.
 
 
 4
 The antenuptial agreement contained the following paragraph:
 
 
 5
 "The said Florence D. Hilborn further promises and agrees that she will keep a separate account and record of the assets and distributive share received by her from the estate of said Joseph A. Craig and a record of all income thereof and of all expenditures therefrom so that said assets and all reinvested proceeds thereof at all times may be reasonable [sic] identified. She does further agree that upon her death, she will give, devise and bequeath by proper will all of the remainder of said assets and reinvested proceeds thereof and all unexpended income therefrom to the residuary beneficiaries of Joseph A. Craig all as provided under the terms and provisions of the last will and testament of said Joseph A. Craig."
 
 
 6
 On October 18, 1957, Craig executed his will. The seventh paragraph thereof contained the following provision:
 
 
 7
 "Seventh: I bequeath to my wife, Florence D. Hilborn Craig, if she survives me, the net sum of One Hundred Thousand Dollars ($100,000.00), exclusive of all charges, taxes, and deductions, pursuant to our Antenuptial Agreement entered into on the 12th day of April, 1946, by and between Joseph A. Craig and Florence D. Hilborn, wherein said Florence D. Hilborn agreed to accept such sum in lieu of any and all her rights of dower and any and all other rights, interests, dower and claims in and to the real estate or personal property of said Joseph A. Craig as his widow, as his surviving joint tenant, or as his next of kin."
 
 
 8
 Craig died on December 30, 1958, and his will was admitted to probate on February 3, 1959.
 
 
 9
 For the purpose of this appeal, the crucial language of the will was Craig's bequest to his wife of "The net sum of One Hundred Thousand Dollars ($100,000.00), exclusive of all charges, taxes, and deductions, pursuant to our Antenuptial Agreement. * * *" The Government's position in this case is based upon Craig's use of the word "pursuant," contending the antenuptial agreement with its limiting language was thereby incorporated by reference into the will, and that such limiting language defeats the marital deduction.
 
 
 10
 The doctrine of "incorporation by reference" is recognized in Wisconsin. Estate of Brandenburg: Hillyer v. Wingert et al., 13 Wis.2d 217, 226, 108 N.W. 2d 374.
 
 
 11
 However, caution should be used in applying the doctrine as it must be clear that the testator intended to incorporate the document referred to. The applicable rule has often been stated. In 94 C.J.S. Wills § 163, pages 954-955, the rule is stated: "The intention of the testator to incorporate into a will a paper or document must clearly appear from the will, a mere reference thereto without evidence of such intention being insufficient. The testator's intention to incorporate or adopt an extrinsic paper must be determined from the language of the will read in the light of the surrounding circumstances."
 
 
 12
 In 144 A.L.R. 715 the following statement appears: "The intention of the testator to incorporate the paper or document in his will must clearly appear from the will, a mere reference thereto, without evidence of such intention, being insufficient. 28 RCL p. 112, Wills, Sec. 64 * * *. (¶) Such intention is to be determined from the language of the will itself, read in the light of the circumstances surrounding the testator at the time of its execution."
 
 
 13
 The language of Mr. Craig's will demonstrates he intended to give his wife $100,000.00 outright, and that his reference to the antenuptial contract was merely intended to show the fulfillment of his obligation thereunder. He did not use the term "incorporate" nor did he condition the bequest on his wife's segregating and accounting for the $100,000.00 or making specific bequests of the remainder upon her death.
 
 
 14
 Mr. Craig's will was undoubtedly drawn by an attorney who could very easily and readily have used clear and definite words of incorporation if that had been the wish of the testator. It seems clear that Mr. Craig had no such intention.
 
 
 15
 In our view, the Government has not established that Mr. Craig intended to incorporate the antenuptial agreement into his will. It is more likely that the will referred to the antenuptial agreement only to make certain that the agreement had not been overlooked.
 
 
 16
 We conclude there is nothing in the record before us to indicate that Mr. Craig intended to restrict the bequest to his wife with any of the limiting language found in the antenuptial agreement. The bequest to testator's wife specifically stated that it was "exclusive of all charges."
 
 
 17
 The District Court did not find it necessary to decide the incorporation question, holding that even if the antenuptial agreement had been incorporated into the will, its limiting language would not disqualify the bequest from the marital deduction.
 
 
 18
 We prefer to base our decision on the fact that the testator did not intend to and, therefore, did not incorporate by reference, the antenuptial agreement into his will. As the bequest to his widow was absolute, the marital deduction should have been allowed.
 
 
 19
 The judgment of the District Court allowing a refund due to the improper disallowance of the marital deduction is
 
 
 20
 Affirmed.
 
 
 21
 SCHNACKENBERG, Circuit Judge (dissenting).
 
 
 22
 Emil J. Nelson, District Director of Internal Revenue, Milwaukee, Wisconsin, has appealed from a judgment of the district court for $46,644.61, with interest, entered against him and in favor of The First National Bank of Janesville, a national banking corporation, as executor of the estate of Joseph A. Craig, deceased, in an action for refund of estate taxes paid because of a marital deduction being disallowed by the Internal Revenue Service.
 
 
 23
 The matter was heard by the district court on motions for summary judgment submitted by each of the parties. There is no issue of fact involved.
 
 
 24
 Joseph A. Craig and Florence D. Hilborn, before getting married in April, 1946, entered into an antenuptial agreement on April 12, 1946, under which she agreed to accept one-third of Craig's net distributable estate or $100,000, whichever sum was smaller, in lieu of all rights she might have in Craig's estate. This agreement contained the following paragraph:
 
 
 25
 "The said Florence D. Hilborn further promises and agrees that she will keep a separate account and record of the assets and distributive share received by her from the estate of said Joseph A. Craig and a record of all income thereof and of all expenditures therefrom so that said assets and all reinvested proceeds thereof at all times may be reasonable [sic] identified. She does further agree that upon her death, she will give, devise and bequeath by proper will all of the remainder of said assets and reinvested proceeds thereof and all unexpended income therefrom to the residuary beneficiaries of Joseph A. Craig all as provided under the terms and provisions of the last will and testament of said Joseph A. Craig."
 
 
 26
 On October 18, 1957 Craig executed a will containing the following provision:
 
 
 27
 "SEVENTH: I bequeath to my wife, Florence D. Hilborn Craig, if she survives me, the net sum of One Hundred Thousand Dollars ($100,000.00), exclusive of all charges, taxes, and deductions, pursuant to our Antenuptial Agreement entered into on the 12th day of April, 1946, by and between Joseph A. Craig and Florence D. Hilborn, wherein said Florence D. Hilborn agreed to accept such sum in lieu of any and all her rights of dower and any and all other rights, interests, dower and claims in and to the real estate or personal property of said Joseph A. Craig as his widow, as his surviving joint tenant, or as his next of kin."
 
 
 28
 Craig died on December 30, 1958 and his will was admitted to probate on February 3, 1959.
 
 
 29
 The question here involved is whether the bequest of $100,000 to Florence D. Hilborn Craig is a proper marital deduction under § 2056 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2056.
 
 
 30
 Plaintiff contends that the bequest to Mrs. Craig is in the form of an absolute gift and under Wisconsin law cannot be limited. It insists that the testator could not have intended to incorporate the contract into the will, that no property passed to the heirs in 1946 at the time of the execution of the agreement or in 1958 at the time of Craig's death and that, under the Internal Revenue Code, "if no interest in `property passes or has passed from the decedent to any person other than such surviving spouse' the bequest is entitled to a marital deduction".
 
 
 31
 Its counsel further argue that there is no provision in the will "for a gift to a residuary legatee or devisee to take the residue or remainder upon Mrs. Craig's death. This is to be accomplished by the will of Mrs. Craig." They contend that a provision in the antenuptial contract that Mrs. Craig will upon her death dispose of all of the remainder of the assets by proper will, indicates "a purely contractual obligation" on her part. They conclude that "there is no terminable interest in Mrs. Craig's use that would defeat the marital deduction". Lastly, they say that, if these arguments be disregarded, Mrs. Craig's use of the $100,000 is unlimited and unrestricted and, under Wisconsin law, would qualify as an absolute power, exercisable in all events and that such a power qualifies for a marital deduction under § 2056(b) (5) of the Internal Revenue Code.
 
 
 32
 I do not agree with these contentions on plaintiff's behalf. I find it helpful in this case to refer to the regulations adopted pertaining to the marital deduction allowance. 26 C.F.R. Part 20, page 95, et seq. Attention is called to § 20.2056(b) — 1 Marital deduction; limitation in case of life estate or other "terminable interest". However, particular attention should be focused on page 114 where a situation as in the case at bar is anticipated:
 
 
 33
 § 20.2056(e) — 2 Marital deduction; definition of "passed from the decedent to his surviving spouse".
 
 
 34
 (a)
 
 
 35
 * * * * * *
 
 
 36
 (5)* * * The deduction may not be taken with respect to a property interest which passed to such spouse merely as trustee, or subject to a binding agreement by the spouse to dispose of the interest in favor of a third person. * * *
 
 
 37
 I hold that Mrs. Craig took a life estate in the $100,000, with power to consume so much of it in her lifetime as was necessary for her support, but her power to use the subject matter of the bequest was limited. She could not squander or dispose of it in derogation of the rights of testator's children. During her lifetime she occupied a fiduciary role as a widow insofar as this money was concerned, and always it was encumbered with her obligation to bequeath to her husband's children the part of that fund which at her death would be unexpended, which during her lifetime it is impossible to determine. It is even possible at her death that the fund would have increased in amount. In any event, the net marital deduction available would be dependent upon the net economic benefit passing to her as the surviving spouse and to no others.
 
 
 38
 Significantly the $100,000 fund could not qualify for a marital deduction because an interest therein passed to the children of testator with the result that part of this property might come into the possession of the children at Mrs. Craig's death.
 
 
 39
 Whether the children were considered remaindermen or third-party beneficiaries of the antenuptial contract is immaterial, because in either one of these capacities they have an interest in property which Mrs. Craig may enjoy during her lifetime only.
 
 
 40
 In the light of these considerations, I would determine that the facts in the case at bar do not support the holding that a marital deduction exists as to the $100,000 or any part thereof. The district court erred in its contrary conclusion. I would reverse the judgment and remand this cause with directions to enter summary judgment in favor of defendant.